IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERRON A., <br><br> Petitioner, <br><br> v. <br><br> STEVEN AHRENDT, <br><br> Respondent. | HON. JOHN MICHAEL VAZQUEZ <br><br> Civil Action <br> No. 18-13149 (JMV) <br><br> **OPINION** |

**VAZQUEZ, District Judge:**

**I.      INTRODUCTION**

Presently before the Court is Petitioner's § 2241 habeas corpus petition challenging his ongoing immigration detention since March 2015 (the "§ 2241 Petition"). (DE 1.) By way of that pleading, Petitioner requests that this Court "order [that he] have a constitutionally adequate bond hearing." (*Id.* at 3.) For the reasons stated herein, the petition is granted.

**II.     BACKGROUND**

Petitioner is a native and citizen of Trinidad and Tobago. (*See*, *e.g.*, DE 6-1 at Ex. A.) He arrived in the United States on July 7, 1996 as a lawful permanent resident. (*Id.*) On July 29, 2010, Petitioner began serving a six-year incarcerative sentence as a result of his February 5, 2010 conviction in a New York criminal court for third-degree robbery.[1] (*See id.* at Ex. B, PageID: 80.) At the completion of that sentence, on or about March 20, 2015, Petitioner was taken into custody by the United States Department of Homeland Security ("DHS"). (*Id.* at Ex. D, ¶ 17.) Petitioner

---

[1] At that time, Petitioner already had several other criminal convictions on his record, including a June 17, 2008 conviction for the fourth-degree criminal sale of marijuana. (*See* DE 6-1, Ex. B at PageID: 82.)

has been detained by immigration authorities ever since. At the outset, it bears noting that Petitioner has, at all times throughout this period, been held pursuant to 8 U.S.C. § 1226(c); this is due to his criminal history and in light of the fact that he has never been subject to a "final" order of removal. *See Leslie v. Att'y Gen.*, 678 F.3d 265, 268-270 (3d Cir. 2012).

On June 22, 2016, Immigration Judge ("IJ") Margaret M. Kolbe ordered Petitioner removed to Trinidad and Tobago and denied his related application for relief under the Convention Against Torture ("CAT"). (DE 6-1 at Ex. H.) On July 19, 2016, Petitioner appealed that decision to the Board of Immigration Appeals (the "BIA"). (*See id.* at Ex. I.) On November 2, 2016, the BIA dismissed his appeal. (*Id.*) On November 30, 2016, Petitioner filed a Petition for Review ("PFR") in the United States Court of Appeals for the Second Circuit challenging the foregoing decisions. (*See* DE 6 at 7; *accord* DE 10 at Ex. A.) On July 20, 2017, the Second Circuit stayed Petitioner's removal during the pendency of his PFR. (*See* DE 6 at 6.) On January 8, 2019, the Second Circuit vacated the BIA's November 2, 2016 decision and remanded Petitioner's immigration matter based on certain deficiencies in the IJ's and the BIA's resolution of his CAT claim. (DE 10 at Ex. A.) It is unclear what additional steps have since been taken by the BIA and/or the immigration court in response to the Second Circuit's remand.

During the pendency of Petitioner's now 52-plus months of detention under § 1226(c), the immigration courts have denied all of his applications to be released on bond. Respondent (hereinafter, "the Government") avers – through the Declaration of Paralegal Specialist Elizabeth Burgess – that the first of Petitioner's bond hearings before an IJ was held on March 31, 2015, at which time "the [IJ] took no action on [Petitioner's] request for bond." (DE 6-1, Ex. D at ¶ 18.) The documentary evidence in the record reflects that IJ Terry A. Bain – after holding a bond hearing on November 17, 2015 (*see id.*, Ex. F at 2) – formally denied Petitioner's application to

be released on bond on December 22, 2015. (*Id.* at Ex. F, 4.) The BIA affirmed IJ Bain's bond denial on March 8, 2016. (*Id.* at Ex. G.) On August 24, 2017, IJ Donald Thompson similarly denied Petitioner's request for a new bond hearing. (*Id.* at Ex. K.) The BIA, on January 24, 2018, likewise affirmed IJ Thompson's bond decision. (*Id.* at Ex. L.) The Government further avers – without any documentary support – that "[o]n October 31, 2018, Petitioner appeared for [another] bond hearing before [an IJ], and the [IJ] took no action on Petitioner's request for release under bond." (DE 6 at 8 (citing Burgus Declar. ¶ 36, DE 6-1 at Ex. D).) The record further indicates that Immigration and Customs Enforcement ("ICE") issued its third, most recent "Decision to Continue [Petitioner's] Detention" on or about September 17, 2018. (DE 6-1 at Ex. N.)

Petitioner filed his § 2241 Petition on or about August 24, 2018. (DE 1.) The Government filed its answer to the same on November 8, 2018. (DE 6.) Petitioner replied on December 6, 2018 (DE 7), and the Government filed a sur-reply in response on December 21, 2018. (DE 8.) On January 28, 2019, Petitioner requested that the Court postpone its habeas decision "due to new evidence." (DE 9.) Shortly thereafter, on February 27, 2019, Petitioner filed an amended habeas pleading attaching, among other things, the Second Circuit's January 8, 2019 remand decision. (DE 10.) The Government filed its response to the same on March 6, 2019. (DE 11.)

## III. ANALYSIS

Under 28 U.S.C. § 2241(c), habeas relief may be extended to an immigration detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* at § 2241(c)(3). As noted, Petitioner has, for the last 52-plus months, been subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).[2] At issue here is whether Petitioner's four-plus years of

---

[2] Under § 1226(c), "[t]he Attorney General shall take into custody any alien" who is inadmissible or deportable on the basis of enumerated categories of crimes and terrorist activities. 8 U.S.C. § 1226(c)(1). By its terms, § 1226(c) does not entitle detainees to a bond hearing. Release is

immigration detention [3] has become unreasonably prolonged as to render that detention unconstitutional.

The Supreme Court first considered the constitutionality of prolonged detention pursuant to § 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003). The *Demore* Court determined that the statute was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In reaching this conclusion, the Supreme Court noted that in most cases detention under the statute lasted only a month and a half and that even in cases where an appeal was taken to the BIA, detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point at the conclusion of removal proceedings. *Id.* at 529. Because the *Demore* Court found the statute constitutional, it rejected the petitioner's challenge even though he had spent a period of approximately six months in detention. *Id.* at 530. Thus, after *Demore* it was clear that detention for less than six months was insufficient to support an as-applied challenge to detention under the statute.

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the Third Circuit considered whether a petitioner was entitled to a bond hearing nearly three years into his detention under § 1226(c). *Id.* at 223-26. The Third Circuit held that he was, notwithstanding that provision's lack of any such requirement. "[W]hen detention becomes unreasonable," the court reasoned, "the Due Process Clause demands a hearing, at which the Government bears the burden of proving that

---

authorized "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2).

[3] The Court's review of ICE's detainee records indicates that Petitioner is currently confined at Bergen County Jail in Hackensack, New Jersey.

4

continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. The Third Circuit noted that *Demore* emphasized that "mandatory detention pursuant to § 1226(c) lasts only for a 'very limited time' in the vast majority of cases," and concluded that the result in *Demore* "may well have been different" if the petitioner's detention had been "significantly longer than the average." *Diop*, 656 F.3d at 233-34 (quoting *Demore*, 538 U.S. at 529 & n.12). The Third Circuit thus interpreted § 1226(c) to "contain[] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length." *Id.* at 235. Beyond that point – which can be determined only by a "fact-dependent inquiry," *id.* at 233 – the statute "yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose," *id.* at 235. The circuit court's interpretation of § 1226(c) relied in part on *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Supreme Court "read an implicit limitation into" 8 U.S.C. § 1231(a)(6) – which governs detention of aliens who have already been ordered removed – so that it "d[id] not permit indefinite detention." *Id.* at 689.

The Third Circuit again applied *Diop's* reasonableness requirement in *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015). There, the circuit court held that because the petitioner's year-long detention under § 1226(c) had become unreasonable, he was entitled to a bond hearing where the government would bear the burden of "produc[ing] individualized evidence that Chavez-Alvarez's continued detention was or is necessary." *Chavez-Alvarez*, 783 F.3d at 474, 478. As in *Diop*, that conclusion resulted from the Third Circuit's "use of a balancing framework [that] makes any determination on reasonableness highly fact-specific." *Id.* at 474.

The Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), however, overruled *Diop's* statutory interpretation of 8 U.S.C. § 1226(c). *Jennings* rejected the conclusion

5

that § 1226(c) contains an implicit reasonableness limitation. *Id.* at 846-47. The Supreme Court noted that in *Demore*, it distinguished § 1226(c) from § 1231(a)(6) (the statute at issue in *Zadvydas*). *See id.* at 846. While detention under § 1231(a)(6) lacks a "definite termination point," § 1226(c) authorizes detention only until the conclusion of removal proceedings. *Id.* (quoting *Demore*, 538 U.S. at 529). *Jennings* holds that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings only if the alien is released for witness-protection purposes." *Id.* at 847 (internal quotation marks omitted). *Jennings*, however, did not address the constitutionality of § 1226(c); the Supreme Court instead remanded to the Ninth Circuit to decide that question in the first instance. *Id.* at 851. *Jennings* therefore, says the Third Circuit, "[does] not call into question [its] constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long." *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277-78 (2018).

In sum, the constitutional holdings of *Diop* and *Chavez-Alvarez* call for a "fact-dependent inquiry requiring an assessment of all of the circumstances of any given case," to determine whether detention without an individualized hearing is unreasonable. *Diop*, 656 F.3d at 234; *see also Chavez-Alvarez*, 783 F.3d at 475 n. 7 (explaining "the highly fact-specific nature" of the balancing framework). Under this approach, district courts must determine whether an individual's detention has crossed the "reasonableness" threshold, thus entitling him or her to a bail hearing. Again, the reasonableness of detention depends on the facts of the detainee's individual case. *See Diop*, 656 F.3d at 232-33 (noting that the inquiry into whether detention has become unreasonable "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances" and "declin[ing] to establish a universal point at which detention will always be considered unreasonable"). At the point the detention becomes unreasonable under the

facts of the case, there must be a bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. In that respect, the Third Circuit held in *Chavez-Alvarez* that, in the absence of bad faith by the criminal alien,[4] his or her detention without a bond hearing may often become unreasonable by the one-year mark. *See Chavez-Alvarez*, 783 F.3d at 478 ("[B]eginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time [the alien] had been detained for one year, the burdens to [the alien's] liberties outweighed any justification for . . . detain[ing] him without bond to further the goals of the statute.").

When assessing the reasonableness of detention under § 1226(c) and determining when the tipping point has been reached, this Court considers the reasonableness of the Government's conduct and the *bona fides* of the detainee's challenge to his removal. *Id.* at 477. Moreover, as the length of detention grows, the Court may also consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *See id.* at 478 ("[W]e cannot ignore the conditions of confinement. Chavez-Alvarez is being held in detention at the York County Prison with those serving terms of imprisonment as a penalty for their crimes. Among our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement 'civil detention' does not, of itself, meaningfully

---

[4] *See Chavez-Alvarez*, 783 F.3d at 476 ("An argument could be made that aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute."); *but see K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at *3 (D.N.J. Aug. 7, 2018) ("While it remains true following *Jennings* that 'aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute,' *Chavez-Alvarez*, 783 F.3d at 476, it also remains true that those aliens who are merely pursuing the remedies available to them in good faith should not be penalized for pursuing their legal rights.").

differentiate it from penal measures. . . . As the length of the detention grows, the weight given to this aspect of his detention increases.").

Here, Petitioner has now been detained under § 1226(c) for 54-plus months, and his last individualized bond hearing was, at the very latest, conducted on October 31, 2018. His detention now exceeds the 35 months that the Third Circuit found prolonged in *Diop*, 656 F.3d at 234, and his case may continue for years in light of the Second Circuit January's 2018 remand. Furthermore, there is no evidence that Petitioner is challenging his removal in bad faith. Indeed, the Second Circuit, in connection with the PFR that Petitioner filed in November 2016, stayed Petitioner's removal on July 20, 2017; it did not lift that stay until it issued its final decision on Petitioner's PFR remanding his immigration matter in January 2019 for appropriate resolution of his CAT claim. Finally, the Court recognizes that Petitioner has been held in the county jails of New Jersey under conditions similar to those used to house serious criminals.

Given these factual circumstances, the Court finds that due process requires that Petitioner be provided an individualized bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *See Diop*, 656 F.3d at 233.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Petitioner's § 2241 Petition. An immigration judge shall therefore be required to provide Petitioner with a bond hearing within twenty-one (21) days, at which the Government bears the burden of showing that Petitioner is either a danger to the community or a flight risk. An appropriate Order accompanies this Opinion.

7/31/19                                                      s/ John Michael Vazquez
Date                                                        JOHN MICHAEL VAZQUEZ
                                                             United States District Judge